# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| STAFFACTORY, LLC, | § § | |
| Plaintiff, | § | Civil Action No. 4:23-CV-4796 |
| v. | § § | |
| VISA SOLUTIONS HEALTHCARE, LLC, | § § | Jury |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Staffactory, LLC sets out its complaints against defendant Visa Solutions Healthcare, LLC.

### *The parties, jurisdiction and venue*

1. Plaintiff Staffactory, LLC, a California limited liability company, is represented by the undersigned counsel. Plaintiff Staffactory, LLC's member resides in California.

2. Defendant Visa Solutions Healthcare, LLC is a Texas limited liability company whose principal office in Texas is located at 25211 Grogans Mill Road, Suite 415, The Woodlands, Texas 77380. Defendant Visa Solutions Healthcare, LLC may be served with process by serving its registered agent, Cooper CPA Group, PC, through its registered agent, Gary N. Cooper, at 1703 W. 12th Street, Houston, Texas 77008, or wherever else he may be found. On information and belief, all of defendant Visa Solutions Healthcare, LLC's members reside in Texas.

3. This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action between a California limited liability company, whose member exclusively

resides in California, and a Texas limited liability company, whose members exclusively reside in Texas, in which the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in Montgomery County, Texas, venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(a)(2).

***Background of this dispute***

5. Plaintiff Staffactory, LLC ("Staffactory") is a California recruiting company specializing in locating healthcare professionals throughout Africa and Europe for employment in the United States.

6. Defendant Visa Solutions Healthcare, LLC ("Visa") is a Texas job placement services company that matches healthcare professionals with hospitals that have job openings.

7. In September and October 2021, Staffactory's President, Chiraz Kelly ("Kelly"), Visa's Vice President, Kelly Brioso ("Brioso"), and Visa's Director of Talent Relations, Christine Ortino ("Ortino") began negotiations regarding the formation of a "partnership" where Staffactory would find and submit qualified healthcare professionals to Visa, and Visa would compensate Staffactory for each healthcare professional placed with one of its client hospitals.

8. During a meeting held on October 20, 2021, Brioso and Ortino touted Visa's relationships with prominent healthcare providers and their growing need for healthcare professionals. In fact, Brioso and Ortino represented that Visa could easily place 2,000 candidates per year from Staffactory alone. Brioso and Ortino also

represented that candidates from Africa and Europe were highly sought after due to their education and training, and assured Kelly that Staffactory's candidates would be readily hired.

9. Due to the significant costs associated with locating healthcare professionals, and the additional capital Staffactory would need to scale up its operations, Kelly insisted that Staffactory be Visa's exclusive partner in Africa (excluding South Africa and Zimbabwe) and Europe (excluding Poland, Portugal, and the United Kingdom) (the "Exclusive Territory"), and refused to enter into any agreement with Visa unless Visa agreed that, for the duration of the relationship, it would only consider candidates from the Exclusive Territory that were submitted by Staffactory.

10. During telephone conferences held on October 25 and 26, 2021, Brioso and Ortino assured Kelly that Visa had no agreements or relationships with any recruiters in the Exclusive Territory, and that Staffactory would be Visa's exclusive partner in those countries.

11. On October 28, 2021, in reliance on Visa's representations, Staffactory and Visa entered into an agreement (the "Agreement") whereby Visa agreed Staffactory would be its exclusive partner for performing recruitment services in the Exclusive Territory.[1] In exchange, Visa agreed to pay Staffactory a total of $4,750 for each employed healthcare professional.

12. Shortly thereafter, Staffactory began submitting qualified candidates in accordance with the Agreement and Visa's requirements, and Visa began, purportedly, accepting and interviewing Staffactory's candidates.

---

[1] Although the Agreement was executed on October 28, 2021, it was effective as of October 21, 2021.

13. However, Staffactory soon realized that Visa's need for candidates, or willingness to pay for them, was not as Brioso and Ortino had previously represented as Visa summarily rejected, or failed to process, many qualified candidates. With respect to others, Ortino either claimed that Visa did not have positions available or delayed contacting and interviewing them, which caused Staffactory's candidates, such as Morteza Alibakhshi Kenari, to look for employment elsewhere. As a result, although it submitted hundreds of qualified candidates, Visa only placed a small fraction of the candidates Staffactory submitted.

14. During monthly meetings held between February and June 2022, Kelly inquired about the low conversion rate. In response, Ortino blamed Staffactory for the low conversion rate and represented that the candidates it had been submitting were not up to par, which was quite surprising given that she had been pressuring Kelly to invest more money into Staffactory's operations so that it could source even more candidates to fill the hundreds of positions that were purportedly available. However, unbeknownst to Staffactory, something more nefarious was at play.

15. Visa breached the Agreement by hiring Margaret Kiplagat ("Kiplagat") to lead a newly-formed division within Visa focused on recruiting candidates from Africa. In addition to hiring her own staff to recruit from the Exclusive Territory, Kiplagat engaged more than twenty (20) other recruiters to locate candidates from the Exclusive Territory, which all but eliminated Visa's need for Staffactory's candidates. Additionally, the recruiters undercut the agreed-upon rate between Staffactory and Visa, and located candidates on terms that were more favorable to Visa.

16. Beginning on September 1, 2022, in an effort to conceal the breach, Brioso began pressuring Kelly to relinquish Staffactory's Exclusive Territory, claiming that Staffactory was not submitting enough qualified candidates to meet Visa's needs. On September 1, 2022, Brioso also promised Kelly that relinquishment of the Exclusive Territory would have no impact on the agreed upon payment amount or the submission and processing workflow. When Kelly refused, Brioso resorted to strong-arm tactics, and threatened to terminate the Agreement unless Kelly complied.

17. Left with no other option after having already made substantial investments into its operations based on the Agreement and Visa's (mis) representations, Kelly reluctantly agreed to amend the Agreement (the "Amendment"), which terminated Staffactory's Exclusive Territory and granted Visa the freedom to engage the services of "any other third-party Recruiting companies anywhere in the world." Approximately one week after execution of the Amendment, Brioso introduced Kiplagat to Kelly.

18. In early January 2023, Brioso and Kiplagat requested a meeting with Kelly to discuss some "operational changes" that Visa was putting in place for the new year. On January 19, 2023, Kiplagat notified Kelly that Visa was decreasing the amount it would pay Staffactory for African general nurses. Despite the contractually agreed payment amount of $4,750, Visa unilaterally decided that it would now be paying Staffactory $2,000.

19. Given that the new amount failed to cover Staffactory's costs, Kelly, Brioso, and Kiplagat met on January 25, 2023, to see if an alternative arrangement could be reached that would be less detrimental to Staffactory's business. Brioso and

Kiplagat refused to consider Kelly's proposals. Instead, on February 28, 2023, Visa disabled Staffactory's access to the portal it used to submit candidates and canceled the interviews scheduled for Staffactory's candidates, all without providing Kelly notice.

20. Staffactory has since discovered that Visa had agreements in place with at least five (5) other recruiting agencies operating in the Exclusive Territory, while Kelly, Brioso, and Ortino were still negotiating the terms of the Agreement. Therefore, as is now abundantly clear, the representations Brioso and Ortino made to Kelly prior to execution of the Agreement, namely, that Visa had no agreements or relationships with any recruiters in the Exclusive Territory, and that Staffactory would be Visa's exclusive partner in the region, were patently false and made to coerce Kelly into entering into the Agreement.

21. Moreover, Staffactory discovered that Visa found employment for at least 62 candidates from the Exclusive Territory – candidates that Staffactory did not submit – during the term of the original Agreement. Therefore, as Staffactory suspected, Visa's refusal to hire its candidates was not a reflection of their quality, but merely a tactic that Visa used to obfuscate its breach and coerce Staffactory into relinquishing the Exclusive Territory.

22. All conditions precedent to filing this litigation have been performed or have occurred.

***Causes of action***

<u>*Fraud / fraudulent inducement*</u>

23. Based on the foregoing, Visa – through Brioso and Ortino – made material misrepresentations of fact to Kelly to induce Staffactory into the Agreement, including the representations that:

- Visa could place 2,000 candidates per year from Staffactory;
- Visa would readily hire Staffactory's candidates;
- Visa had no agreements or relationships with any recruiters in the Exclusive Territory; and
- Staffactory would be Visa's exclusive partner in the Exclusive Territory,

which Brioso and Ortino knew or should have known were false when made, particularly since Visa already had agreements with at least five (5) recruiters operating in the Exclusive Territory.

24. Visa intended for Staffactory to rely on its misrepresentations in entering into the Agreement, which Staffactory did to its foreseeable and material detriment.

25. Moreover, Visa – through Brioso and Ortino – made material misrepresentations of fact to Kelly to induce Staffactory into investing more money into its operations and relinquishing the Exclusive Territory, including the representations that the candidates that Staffactory submitted were not qualified and that Staffactory was not submitting enough candidates, which Visa knew or should have known were false when made.

26. As a result, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Fraud by nondisclosure / fraudulent concealment*

27. Based on the foregoing, Visa – through Brioso and Ortino – had a duty to disclose its pre-existing contractual relationships with other recruiters operating in the Exclusive Territory. Brioso and Ortino not only failed to disclose those material facts to Kelly, but actively concealed Visa's fraud by rejecting or refusing to consider many of the qualified candidates that Staffactory submitted.

28. By blaming Staffactory for the low conversion rate, Visa ensured that Staffactory would not suspect Visa of harvesting candidates from other recruiters operating in the Exclusive Territory.

29. Visa's failure to disclose its relationships with other recruiters, and its rejection of many Staffactory candidates, was meant to, and did, induce Staffactory to continue performing under the Agreement while Visa developed relationships with other recruiters in the Exclusive Territory and its own internal recruiting department, which Staffactory would not have done but for Visa's failure to disclose and fraudulent concealment.

30. As a result of Visa's failure to disclose and fraudulent concealment, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Breach of contract*

31. Based on the foregoing, the parties established a contractual relationship whereby Visa agreed that Staffactory would be its exclusive partner for performing recruitment services in the Exclusive Territory, and Visa agreed to pay Staffactory $4,750 for each employed healthcare professional.

32. Visa breached the parties' Agreement from the moment it was entered into by having pre-existing contractual agreements with at least five (5) other recruiting companies that operated in the Exclusive Territory.

33. Visa also breached the parties' Agreement by using its own staff, and engaging more than twenty (20) additional recruiters, to locate candidates within the Exclusive Territory, which all but eliminated Visa's need for Staffactory's candidates.

34. Finally, Visa breached the parties' Agreement by considering and placing at least 62 candidates that it received from other recruiters operating in the Exclusive Territory, instead of the qualified candidates that Staffactory submitted.

35. As a result of Visa's breach of the parties' Agreement, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages incurred.

*Negligence / negligent misrepresentations*

36. Based on the foregoing, Visa owed Staffactory a legal duty to disclose its relationships with recruiters operating in the Exclusive Territory and to consider and place the candidates that Staffactory submitted.

37. The occurrences made the basis of this lawsuit resulted from one or more of Visa's acts and omissions of negligence, which are discussed above and that separately or concurrently, were the legal and proximate causes of Staffactory's damages.

38. For example, given that Visa disclosed relationships it had with recruiters operating in certain countries in Africa and Europe, e.g. South Africa, Zimbabwe, Poland, Portugal, and the United Kingdom, it had an affirmative duty to disclose the

relationships it had with all other recruiters operating within the Exclusive Territory – both before the Agreement was entered into and once Staffactory was made aware of the relationships. By failing to disclose its relationships with recruiters operating in the Exclusive Territory, Visa breached its duty.

39. Moreover, Visa had a duty to perform the Agreement with care, skill, reasonable expedience, and faithfulness. By completely refusing to consider some of Staffactory's candidates, failing to respond to others, and considering candidates from other recruiters operating within the Exclusive territory, Visa breached its duty.

40. As a result of Visa's negligence and negligent misrepresentations, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Punitive damages*

41. As a result of Visa's fraud and malice, Staffactory seeks an award of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.001, *et seq*.

*Attorney's fees*

42. Pursuant to Texas Civil Practice and Remedies Code § 38.001, *et seq*., Visa is responsible for all attorney's fees and expenses incurred through the trial and any subsequent appeals in this matter.

**Prayer**

WHEREFORE, plaintiff Staffactory, LLC requests that the Court, after trial on the merits or summary determination, enter final judgment against defendant Visa Solutions Healthcare, LLC, awarding Staffactory, LLC all actual, special, consequential, incidental, and exemplary damages to which it is justly entitled, compounded by pre- and

postjudgment interest, as well as all attorney's fees incurred through the trial of this matter and any subsequent appeals, costs of Court, and the expenses of experts, investigators, paralegals, court reporters and videographers, and all other relief to which it is justly entitled.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
daniel@jacksonlaw-tx.com

Attorney-in-charge for Plaintiff

**OF COUNSEL:**

The Jackson Law Firm
Daniel J. Gierut, SBN 24101804
S.D. of Texas No. 3132105
3900 Essex Lane, Suite 1116
Houston, Texas 77027
(713) 522-4435
(713) 527-8850 – fax
dgierut@jacksonlaw-tx.com