IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STAFFACTORY, LLC,** § | | |
| Plaintiff, § | Civil Action No. 4:23-CV-4796 | |
| v. § | | |
| **VISA SOLUTIONS HEALTHCARE, LLC,** § | Jury | |
| Defendant. § | | |

### PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

Plaintiff Staffactory, LLC sets out its first amended complaints against defendant Visa Solutions Healthcare, LLC.

***The parties, jurisdiction, and venue***

1. Plaintiff Staffactory, LLC, a California limited liability company, is represented by the undersigned counsel. Plaintiff Staffactory, LLC's member resides in California.

2. Defendant Visa Solutions Healthcare, LLC is a Texas limited liability company whose principal office in Texas is located at 25211 Grogans Mill Road, Suite 415, The Woodlands, Texas 77380. Defendant Visa Solutions Healthcare, LLC has been served with process and appeared.

3. This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action between a California limited liability company, whose member exclusively resides in California, and a Texas limited liability company, whose members exclusively reside in Texas, in which the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. Because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in Montgomery County, Texas, venue is proper in the Southern District of Texas under 28 U.S.C. § 1391(a)(2).

***Background of this dispute***

5. Plaintiff Staffactory, LLC ("Staffactory") is a California recruiting company specializing in recruiting various professionals, including healthcare professionals.

6. Defendant Visa Solutions Healthcare, LLC ("Visa") is a Texas job placement services company in the business of placing qualified individuals for long-term employment in the United States and its territories.

7. In September and October 2021, Staffactory's President, Chiraz Kelly ("Kelly"), Visa's Vice President, Kelly Brioso ("Brioso"), and Visa's Director of Talent Relations, Christine Ortino ("Ortino") began negotiations regarding the formation of a "partnership" whereby Staffactory would find and submit qualified nurses to Visa for placement at healthcare faciitiies in the United States.  In exchange, Visa would compensate Staffactory for each nurse placed with one of its client healthcare facilities.

8. Initially, Ortino approached Kelly representing that, although Visa was an experienced agency that recruited healthcare professionals worldwide, it did not yet have an extensive presence in Africa.  Because Kelly was originally from Africa, Ortino assured Kelly that Staffactory would be uniquely suited to recruit African nurses.  Ortino also represented that Visa's requirements for nurses exceeded its supply and candidates submitted by Staffactory would have no problem coming to the United States.

9. Although Staffactory had worked with healthcare professionals in the past, it had not previously recruited nurses from outside the United States. Kelly made this clear emphasizing that, if Staffactory and Visa proceeded with their partnership, Staffactory would incur significant costs to expand its operations internationally and, therefore, any agreement between Staffactory and Visa would have to address these expansion costs.

10. To quiet Staffactory's concerns and induce it to do business with Visa, on October 20, 2021, Brioso and Ortino represented that Visa could easily place 2,000 candidates per year from Staffactory alone. Brioso and Ortino emphasized Visa's strong relationships with prominent healthcare providers and their growing need for nurses. Brioso and Ortino further assured Kelly that candidates from Africa and Europe were highly sought after due to their education and training and that Staffactory's candidates would be readily hired by the healthcare facilities Visa worked with. Moreover, Brioso and Ortino told Kelly that Staffactory's candidates would start work in the United States within ten to sixteen months.

11. Due to the significant costs associated with locating foreign nurses, and the additional capital needed to scale up Staffactory's operations, Kelly insisted that Staffactory be Visa's exclusive partner in Africa (excluding South Africa and Zimbabwe) and Europe (excluding Poland, Portugal, and the United Kingdom) (the "Exclusive Territory") and that, for the duration of their relationship, Visa only consider candidates from the Exclusive Territory that were submitted by Staffactory.

12. During telephone conferences held on October 25 and 26, 2021, Brioso and Ortino assured Kelly that Visa had no agreements or relationships with any

recruiters in the Exclusive Territory, and that Staffactory would be Visa's exclusive partner in the Exclusive Territory. In short, despite the cost of expanding Staffactory's recruitment activities outside the U.S., Visa assured Staffactory that its investment would be low risk and that Visa and Staffactory would do "beautiful things together."

13. On October 28, 2021, in reliance on Visa's representations, Staffactory entered into a Recruitment Company Service Partner Agreement with Visa (the "Agreement"). The effective date of the Agreement was October 21, 2021. The Agreement included the all-important Exclusive Territory provision and that Staffactory would be Visa's sole partner in the Exclusive Territory.

14. Under the Agreement, Staffactory's compensation was initially tied to the licensure status of the nurse recruits it submitted. Within weeks after the Agreement was signed, Visa and Staffactory modified Staffactory's terms of payment to a flat fee for each nurse that executed an employment agreement with a U.S. employer, regardless of the candidate's licensure status.

15. Staffactory's fee was to be paid in three tranches. Twenty-five percent of Staffactory's total fee was due when a candidate executed a contract with a U.S. employer. Fifty percent of Staffactory's fee was due when the candidate's I-140 visa application was filed with the United States Customs and Immigration Service. The remaining twenty-five percent of Staffactory's fee was due on the 90th day after the candidate's first day of employment in the United States.

16. Relying on the Agreement, Staffactory expanded its staff and quickly began locating, interviewing, and screening candidates in Africa, Europe, and the Middle East. Staffactory submitted qualified candidates in accordance with the

Agreement and Visa's requirements. In response, Visa began reviewing resumes and interviewing some of the candidates presented by Staffactory.

17. However, rather than working in partnership with Staffactory, Visa largely excluded Staffactory from the recruitment process once a candidate submitted a resume and introductory video. As a result, Staffactory received little, if any, information about the status of its candidates and Visa's efforts to promote them—not only before they were presented to a healthcare facility, but also after an offer was made and throughout the placement process.

18. Eventually, Staffactory realized that Visa's need for candidates and its willingness to pay for them, were not as Brioso and Ortino had previously represented. For instance, Visa would either summarily reject or fail to process qualified candidates. In other cases, Visa claimed it did not have positions available or delayed contacting and interviewing Staffactory's candidates. This delay caused Staffactory's candidates, such as Morteza Alibakhshi Kenari, to seek employment elsewhere.

19. Remarkably, for a period of time, Visa lost track of dozens of candidates submitted by Staffactory. As a result, although Staffactory submitted hundreds of qualified candidates, Visa only placed a small fraction of them.

20. During monthly meetings held between February and June 2022, Kelly questioned why Visa had placed so few Staffactory candidates. Kelly was told by Ortino that Visa was so busy it could not keep up with the candidates being submitted and new Visa employees were being hired. Visa also pressured Staffactory to invest more money into Staffactory's operations to source even more candidates to fill the hundreds of positions purportedly available. In fact, in July 2022 Ortino encouraged Staffactory to

"keep up the GREAT work," noting Staffactory was on the way to being Visa's "number 1." However, unbeknownst to Staffactory, something nefarious was at play.

21. Unknown to Staffactory at the time, Visa breached the Agreement by hiring Margaret Kiplagat ("Kiplagat") to lead a newly-formed division within Visa focused on recruiting candidates from Africa, including from the Exclusive Territory. In addition to hiring her own staff to recruit from the Exclusive Territory, Kiplagat engaged more than twenty (20) other recruiters to locate candidates from the Exclusive Territory. These recruiters undercut the agreed-upon rate between Staffactory and Visa, located candidates on terms more favorable to Visa, and effectively eliminated the financial incentive for Visa to place Staffactory's candidates.

22. Beginning on or about September 1, 2022, in an effort to conceal Visa's misconduct, Brioso began pressuring Kelly to relinquish Staffactory's Exclusive Territory, claiming Staffactory was not submitting enough qualified candidates to meet Visa's needs. Brioso also promised Kelly that giving up the Exclusive Territory would impact neither the fees paid to Staffactory nor the submission and processing of Staffactory candidates. When Kelly refused to give up the Exclusive Territory, Brioso resorted to strong-arm tactics, threatening to terminate the Agreement unless Kelly complied.

23. Having already made substantial investments in its operations based on the Agreement and Visa's (mis) representations, and relying on Visa's promises that giving up the Exclusive Territory would impact neither Staffactory's fees nor placement of Staffactory's candidates, Kelly reluctantly agreed to amend the Agreement (the "Amendment") to terminate Staffactory's Exclusive Territory and allow Visa to engage

the services of "any other third-party Recruiting companies anywhere in the world." Approximately one week after execution of the Amendment, Brioso introduced Kiplagat to Kelly.

24.     In early January 2023, Brioso and Kiplagat requested a meeting with Kelly to discuss "operational changes" Visa was implementing for the new year.  On January 19, 2023, Kiplagat notified Kelly that Visa was reducing the amount it would pay Staffactory for African general nurses.  Despite the contractually agreed payment amount of $4,750—and Visa's promises that if Staffactory gave up the Exclusive Territory, its fees would not be impacted—Visa unilaterally decided it would now pay Staffactory $2,000.

25.     The new amount failed to cover Staffactory's costs, and on January 25, 2023, Kelly met with Brioso, and Kiplagat hoping to explore alternative arrangements that would be less detrimental to Staffactory's business.  However, Brioso and Kiplagat refused to consider Kelly's proposals.  Instead, on or about February 28, 2023, without notice, Visa terminated the Agreement by disabling Staffactory's access to the portal used to submit candidates and canceling Staffactory's candidates' interviews.

26.     Staffactory has since discovered that, prior to the Amendment, and contrary to Visa's representations that induced Staffactory to enter into the Agreement, Visa had agreements in place with at least five (5) other recruiting agencies operating in the Exclusive Territory.  These relationships existed while Visa and Staffactory were negotiating the terms of the Agreement.

27.     Therefore, as is now abundantly clear, the representations Visa made to Staffactory prior to execution of the Agreement, namely, that Visa had no agreements or

relationships with any recruiters in the Exclusive Territory, and that Staffactory would be Visa's only staffing source in the Exclusive Territory, were patently false and made to induce Staffactory into entering into the Agreement.

28. Staffactory also discovered that, prior to the Amendment, Visa had placed at least 62 candidates from the Exclusive Territory who were not submitted by Staffactory. Therefore, Visa's refusal to place Staffactory's candidates was not a reflection of their quality, but rather a deliberate tactic used to obfuscate Visa's wrongdoing, coerce Staffactory into relinquishing the Exclusive Territory, and, in turn, prioritize candidates that made Visa more money.

29. Furthermore, both before and after Visa terminated the Agreement, Visa claimed it was entitled to the return of amounts paid to Staffactory because candidates either left or were rejected from Visa's program. These "credit memos" did not explain why the candidate was no longer in, or moving forward with, the recruitment process. And, because Staffactory was excluded from most communications with its candidates once they were accepted into Visa's program, Staffactory was unable to determine the basis for the claim to a credit.

30. All conditions precedent to filing this litigation have been performed or have occurred.

**Causes of action**

*Fraud / fraudulent inducement*

31. Based on the foregoing, Visa – through Brioso and Ortino – made material misrepresentations of fact to Kelly to induce Staffactory into the Agreement, including the representations that:

- Visa could place 2,000 candidates per year from Staffactory;
- Visa would readily hire Staffactory's candidates;
- Visa had no agreements or relationships with any recruiters in the Exclusive Territory;
- Candidates would start work in the United States within ten to sixteen months; and
- Staffactory would be Visa's exclusive partner in the Exclusive Territory,

which Brioso and Ortino knew or should have known were false when made, particularly since Visa already had agreements with at least five (5) recruiters operating in the Exclusive Territory.

32. Visa intended for Staffactory to rely on its misrepresentations in entering into the Agreement, which Staffactory did to its foreseeable and material detriment.

33. Moreover, Visa – through Brioso and Ortino – made material misrepresentations of fact to Kelly to induce Staffactory into investing more money into its operations and relinquishing the Exclusive Territory, including representations that; the candidates Staffactory submitted were not qualified, Staffactory was not submitting enough candidates, and the fees and placement of Staffactory candidates would not change if Staffactory gave up the Exclusive Territory, which Visa knew or should have known were false when made.

34. As a result, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Fraud by nondisclosure / fraudulent concealment*

35. Based on the foregoing, Visa – through Brioso and Ortino – had a duty to disclose its pre-existing contractual relationships with other recruiters operating in the

Exclusive Territory. Visa – through Brioso and Ortino – not only failed to disclose those material facts to Kelly, but actively concealed Visa's fraud by rejecting or refusing to consider many of the qualified candidates that Staffactory submitted.

36. By blaming Staffactory for the low conversion rate, Visa ensured that Staffactory would not suspect Visa of placing candidates from other recruiters operating in the Exclusive Territory.

37. Visa's failure to disclose its relationships with other recruiters, and its rejection of many Staffactory candidates, was meant to, and did, induce Staffactory to continue performing under the Agreement while Visa developed relationships with other recruiters in the Exclusive Territory and created its own internal recruiting department, which Staffactory would not have done but for Visa's failure to disclose and fraudulent concealment.

38. As a result of Visa's failure to disclose and fraudulent concealment, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Breach of contract*

39. Based on the foregoing, the parties established a contractual relationship whereby Visa agreed that Staffactory would be its exclusive partner for performing recruitment services in the Exclusive Territory, and Visa agreed to pay Staffactory $4,750 for each employed healthcare professional.

40. Visa breached the Agreement from the moment it was signed by having pre-existing contractual agreements with at least five (5) other recruiting companies that operated in the Exclusive Territory.

41. Visa also breached the Agreement by using its own staff, and engaging more than twenty (20) additional recruiters, to locate candidates within the Exclusive Territory, which all but eliminated Visa's need for Staffactory's candidates which were more expensive based on the fee set forth in the Agreement.

42. Finally, Visa breached the Agreement by considering and placing at least 62 candidates that it received from other recruiters operating in the Exclusive Territory, instead of the qualified candidates that Staffactory submitted.

43. As a result of Visa's breach of the Agreement, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages incurred.

*Negligence / negligent misrepresentations*

44. Based on the foregoing, and in the alternative, Visa owed Staffactory a legal duty to disclose its relationships with recruiters operating in the Exclusive Territory and to properly consider and place the candidates that Staffactory submitted.

45. The occurrences made the basis of this lawsuit resulted from one or more of Visa's acts and omissions of negligence, which are discussed above and that separately or concurrently, were the legal and proximate causes of Staffactory's damages.

46. For example, given that Visa disclosed relationships it had with recruiters operating in certain countries in Africa and Europe, e.g. South Africa, Zimbabwe, Poland, Portugal, and the United Kingdom, it had an affirmative duty to disclose the relationships it had with all other recruiters operating within the Exclusive Territory – both before the Agreement was entered into and once Staffactory was made aware of

the relationships. By failing to disclose its relationships with recruiters operating in the Exclusive Territory, Visa breached its duty.

47. Moreover, Visa had a duty to perform the Agreement with care, skill, reasonable expedience, and faithfulness. By completely refusing to consider some of Staffactory's candidates, failing to respond to others, and considering candidates from other recruiters operating within the Exclusive Territory, Visa breached its duty.

48. Visa also made the representations set forth above, which were statements of fact, in the course of Visa's business and in a transaction in which Visa had a pecuniary interest. The information provided by Visa, including information pertaining to the number of Staffactory candidates that Visa could place each year, that U.S. healthcare providers would readily hire Staffactory's candidates, that Visa had no recruiters in the Exclusive Territory other than Staffactory, the timing for placement in the United States, and that Staffactory would be Visa's exclusive partner in the Exclusive Territory were false and supplied for the guidance of Staffactory's business. Neither did Visa exercise reasonable care or competence in obtaining or communicating this information to Staffactory.

49. As a result of Visa's negligence and negligent misrepresentations, Staffactory has been foreseeably and materially injured and seeks to recover all actual, consequential, and incidental damages.

*Punitive damages*

50. Based on the foregoing, as a result of Visa's fraud, malice, and knowing and intentional conduct, Staffactory seeks an award of exemplary damages. Tex. Civ. Prac. & Rem. Code § 41.001, *et seq*.

<u>*Attorney's fees*</u>

51.   Pursuant to Texas Civil Practice and Remedies Code § 38.001, *et seq.*, and the terms of the Agreement, Visa is responsible for all of Staffactory's attorney's fees and expenses incurred through the trial and any subsequent appeals in this matter.

**Prayer**

WHEREFORE, plaintiff Staffactory, LLC requests that the Court, after trial on the merits or summary determination, enter final judgment against defendant Visa Solutions Healthcare, LLC, awarding Staffactory, LLC all actual, special, consequential, incidental, and exemplary damages to which it is justly entitled, compounded by pre- and postjudgment interest, as well as all attorney's fees incurred through the trial of this matter and any subsequent appeals, costs of Court, and the expenses of experts, investigators, paralegals, court reporters and videographers, and all other relief to which it is justly entitled.

Respectfully submitted,

/s/ *Daniel W. Jackson*

Daniel W. Jackson, SBN 00796817
S.D. of Texas No. 20462
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
daniel@jacksonlaw-tx.com

Attorney-in-charge for Plaintiff

**OF COUNSEL:**

The Jackson Law Firm
Daniel J. Gierut, SBN 24101804
S.D. of Texas No. 3132105
3900 Essex Lane, Suite 1116
Houston, Texas  77027
(713) 522-4435
(713) 527-8850 – fax
dgierut@jacksonlaw-tx.com