# RECRUITMENT SERVICE AGREEMENT

The following Recruitment Company Service Partner Agreement ("Agreement") is entered into on October 21, 2021 between:

**Visa Solutions Healthcare, LLC** with its headquarters located at 25227 Grogans Mill Rd, Suite 220, The Woodlands, TX 77380 USA hereinafter referred to as "Placing Company," represented by: Kelly Brioso.

and

**Staffactory LLC.** with its headquarters located at 5901 W. Century Blvd., Suite 750 Los Angeles, CA 90045 hereinafter referred to as ("Recruiting Company"), represented by: Chiraz Kelly.

Visa Solutions Healthcare and Recruiting Company are sometimes referred to as "Parties" or "Party" within this Agreement.

**Section 1. Subject of the Agreement & Overview**

1.1. Recruiting Company is in the business of the recruitment of foreign educated healthcare professionals for placement in the United States of America ("United States" or "US") and is licensed, certified, or authorized by law to perform this service.

1.2. Visa Solutions Healthcare is in the business of placing qualified individuals for the purpose of long-term employment in healthcare facilities throughout the United States and its territories.

1.3. The Parties are entering into this Agreement for the purpose of recruitment of healthcare professionals for employment in the United States and its territories.

1.4. Recruiting Company hereby agrees to perform Recruitment Services (hereinafter referred to as the "Service"), the details of which are described in this Agreement, for Visa Solutions Healthcare.

1.5. The requirements of the specific Services will be set forth in a written Order presented by Visa Solutions Healthcare and accepted by the Recruiting Company. A template of this Order is incorporated as Appendix A of this Agreement ("Recruitment Order").

1.6. Recruiting Company locates Healthcare Providers ("HCP") as defined in Section 2, performs interviews and undertakes an initial screening process according to the requirements set forth in the Recruitment Order. For the HCPs that pass the screening process, Recruiting Company then gathers or completes documentation required by Visa Solutions Healthcare and sends that HCP's required documentation to Visa Solutions Healthcare through electronic means.

1.7. Visa Solutions Healthcare reviews the submitted documentation to be sure it is both compliant and complete with respect to the Recruitment Order and, if accepted, Visa Solutions Healthcare attempts to place such HCP with a US Employer. If the HCP is approved by a US Employer, the following steps will occur: (i) Employment Agreement between US Employer and HCP will be provided and (ii) a Service Agreement between Visa Solutions Healthcare and HCP will be provided.

1.8. During the next 45-day period, Recruiting Company is required to provide all additional documentation required in Appendix C to this Agreement ("Required Documentation").

Without the documents requested, the immigration process cannot proceed, and Visa Solutions Healthcare will have the option to cancel or temporarily suspend the process for such HCP. If Visa Solutions Healthcare elects to cancel or temporarily suspend the process for any HCP, Recruiting Company is required to either refund or extend a Credit Note to the Visa Solutions Healthcare (at the Visa Solutions Healthcare's sole discretion) for all fees received by Recruitment Company in connection with that particular HCP.

**Section 2. Performance by the Parties**

2.1. Recruiting Company hereby agrees to search for and recruit qualified individuals for positions corresponding to Visa Solutions Healthcare's requirements for HCPs according to the instructions given by Visa Solutions Healthcare satisfying the HCP's profiles/job descriptions conveyed to Recruiting Company in each Recruitment Order in particular.

2.2. Recruiting Company hereby agrees to collect and submit all the required HCP's documentation to Visa Solutions Healthcare in a timely manner and according to the instructions provided in the Appendix C to this Agreement ("Required Documentation")

2.3. Visa Solutions Healthcare has the right to decline any HCP presented by the Recruiting Company. Visa Solutions Healthcare shall notify the Recruiting Company within fifteen (15) business days if an HCP has been accepted.

**Section 3. Rejection of HCP**

3.1 If Visa Solutions healthcare rejects an HCP presented by Recruiting Company, Recruiting Company shall receive no fee, except as provided for in Section 3.2.

3.2 If Visa Solutions Healthcare moves forward in the immigration process within twelve (12) months of the HCP being presented to the Visa Solutions Healthcare, and it reaches the point of conclusion with any of the contracts or agreements enumerated above, Visa Solutions Healthcare will inform Recruiting Company about the fact of concluding any of such agreements and will pay the remuneration set forth in Section 4 of this Agreement.

**Section 4. Process and Compensation**

4.1 Recruiting Company shall be compensated as shown on the attached Appendix B ("Fee Schedule").

4.2 Recruiting Company shall locate and interview HCPs and undertake an initial screening process according to the requirements set forth in the Recruitment Order. For every HCPs that pass the screening process Recruiting Company shall gather all documentation required by Visa Solutions Healthcare and shall send such HCP's required documentation to Visa Solutions Healthcare through electronic means according to the instructions provided in Appendix C ("Required Documentation").

4.3 If accepted, Visa Solutions Healthcare attempts to place such HCP with a US Employer.

4.4 If approved by a US Employer, the Recruiting Company will coordinate the execution of any and all documents necessary.

4.5   Visa Solutions Healthcare shall coordinate the execution of employment agreements and offer letters.

**Section 5. Guarantee**

5.1   In the event an HCP begins employment with a US Employer and the HCP resigns or is terminated within ninety (90) days after commencement of employment, Recruiting Company shall present Visa Solutions Healthcare a new HCP free of charge and in compliance with Visa Solutions Healthcare's requirements as described on the Recruitment Order. In the event Recruiting Company is unable to provide a new HCP candidate within thirty (30) days, Recruiting Company shall issue a credit note to Visa Solutions Healthcare equivalent to the amount paid by visa Solutions Healthcare to Recruitment Company for the HCP who resigned or was terminated during the guarantee period. This provision does not apply if the HCP's resignation from employment in the company resulted from the company's failure to provide the conditions included in the offer presented to the HCP.

**Section 6. Confidentiality & Non-Compete/Non-Solicitation**

6.1   Visa Solutions Healthcare and Recruiting Company acknowledge that, as a result of this Agreement, it will occupy a position of mutual trust and confidence and become familiar with the following, any and all of which constitute confidential information of Visa Solutions Healthcare and Recruiting company, (collectively the "Confidential Information.")

6.2 Visa Solutions Healthcare will give Recruiting company the exclusivity to locate, screen and hire HCPs for Visa Solutions Healthcare's Clients in the United States and will not use any third-party Recruiting companies in all Africa Continent expect to (South Africa and Zimbabwe) and in all European continent except to Portugal, The United Kingdom and Poland. for the duration of this agreement.

6.3

   6.3.1   Visa Solutions Healthcare will not, directly or indirectly, either for itself or any other Person, (A) induce or attempt to induce any employee of Recruiting Company to leave the employ of Recruiting Company, (B) in any way interfere with the relationship between Recruiting Company and any employee Recruiting Company, (C) employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who has been employed or retained by Recruiting Company during the preceding twelve months, (D) induce or attempt to induce any business partner, supplier, licensee, or business relation of Recruiting Partner to cease doing business with Recruiting Company, or in any way interfere with the relationship between any partner, supplier, licensee, or business relation of Recruiting Company, or (E) employ, hire or engage the services of any Person that provides services to or on behalf of Recruiting Company that was introduced to Visa Solutions by Recruiting Company.

   6.3.2   Visa Solutions will not, directly or indirectly, either for itself or any other Person, partners solicit the business of any Person known to Recruiting Company to be a customer or business partner of Recruiting Partner.

   6.3.3   In the event of a breach by Visa Solutions Healthcare of any covenant set forth in Section 5 of this Agreement, the term of such covenant will be extended by the period of the duration of such breach.

  6.3.4 Visa Solutions Healthcare will not, at any time during disparage Recruiting Company, or any of its managers, members, shareholders, directors, officers, employees, or agents.

6.4 If Visa Solutions breaches the covenants set forth in Section 5 of this Agreement, Recruiting company will be entitled to the following remedies:

  6.4.1 Damages from Visa Solutions

  6.4.2 To offset against all obligations to Visa Solutions Healthcare all amounts which may be due to Recruiting Company; and

  6.4.3 In addition to its right to damages and any other rights it may have, to obtain injunctive or other equitable relief to restrain any breach or threatened breach or otherwise to specifically enforce the provisions of Section 5 of this Agreement, it being agreed that money damages alone would be inadequate to compensate Recruiting Company and it would be an inadequate remedy for such breach.

  6.4.4 The rights and remedies of the Parties to this Agreement are cumulative and not alternative.

  6.4.5 Recruiting Company shall not be entitled to exercise any remedies under this Section 5 unless and until Recruiting Company has provided written notice to Visa Solutions of the alleged breach and Visa Solutions has failed to (i) to cure the alleged breach, if such breach is capable of cure, within one week after receipt of written notice from Recruiting Company to Visa Solutions Healthcare and (ii) cure such breach as soon as practicable thereafter.

6.5 Confidential Information includes: (i) any and all trade secrets concerning the business and affairs of Visa Solutions Healthcare, agreements, contracts, data, know-how, compositions, processes, designs, samples, inventions and ideas, past, current, and planned research and development, current and planned recruiting methods and processes, methodologies, customer lists, current and anticipated customer requirements, price lists, market studies, and business plans, of Visa Solutions Healthcare and any other information, however documented, of Visa Solutions Healthcare that is a trade secret under Texas law; (ii) any and all information concerning the business and affairs of Visa Solutions Healthcare (which includes historical financial statements, financial projections and budgets, historical and projected sales, capital spending budgets and plans, the names and backgrounds of key personnel, personnel training and techniques and materials), however documented; and (iii) any and all notes, analysis, compilations, studies, summaries, and other material prepared by or for Visa Solutions Healthcare containing or based, in whole or in part, on any information included in the foregoing.

6.6 Confidential Information also includes how the business of Visa Solutions Healthcare is conducted, and how its services are marketed and the other parties it does business with, throughout the contiguous 48 states of the continental United States (the "Territory.")

6.7 Visa Solutions Healthcare competes with other businesses that are or could be located in any part of such Territory and Visa Solutions Healthcare has required that Recruiting

Company make the covenants set forth in this Section 5 as a condition Visa Solutions Healthcare doing business with Recruiting Company.

6.8 The provisions of Section 5 of this Agreement are reasonable and necessary to protect and preserve Visa Solutions Healthcare's business and Visa Solutions Healthcare would be irreparably damaged if Recruiting Company were to breach the covenants set forth in Section 5 of this Agreement.

6.9 Recruiting Company acknowledges and agrees that all Confidential Information known or obtained by Recruiting Company, whether before or after the date hereof, is the property of Visa Solutions Healthcare. Therefore, Recruiting Company agrees that Recruiting Company will not, at any time, disclose to any unauthorized Persons or use for its own account or for the benefit of any third party any Confidential Information, whether Recruiting Company has such information in Recruiting Company's memory or embodied in writing or other physical form, without Visa Solutions Healthcare's prior written consent, unless and to the extent that the Confidential Information is or becomes generally known to and available for use by the public other than as a result of Recruiting Company's fault or the fault of any other Person bound by a duty of confidentiality to Visa Solutions Healthcare.

6.10 As an inducement for Visa Solutions Healthcare to enter into the Recruitment Partner Services Agreement, Recruiting Company agrees that for the period of the term of the Recruitment Partner Services Agreement.

    6.10.1 Recruiting Company will not, directly or indirectly, either for itself or any other Person, (A) induce or attempt to induce any employee of Visa Solutions Healthcare to leave the employ of Visa Solutions Healthcare, (B) in any way interfere with the relationship between Visa Solutions Healthcare and any employee of Visa Solutions Healthcare, (C) employ, or otherwise engage as an employee, independent contractor, or otherwise, any person who has been employed by Visa Solutions Healthcare during the term of the agreement, (D) induce or attempt to induce any customer, supplier, licensee, or business relation of Visa Solutions Healthcare to cease doing business with Visa Solutions Healthcare, or in any way interfere with the relationship between any customer, supplier, licensee, or business relation of Visa Solutions Healthcare, or (E) employ, hire or engage the services of any Person that provides services to or on behalf of Visa Solutions Healthcare that was introduced to Recruiting Company by Visa Solutions Healthcare.

    6.10.2 Recruiting Company will not, directly or indirectly, either for itself or any other Person, solicit the business of any Person known to Recruiting Company to be a customer of Visa Solution Healthcare.

    6.10.3 In the event of a breach by Recruiting Company of any covenant set forth in Section 5 of this Agreement, the term of such covenant will be extended by the period of the duration of such breach.

    6.10.4 Recruiting Company will not, at any time during the agreement, disparage Visa Solutions Healthcare, or any of its managers, members, shareholders, directors, officers, employees, or agents.

6.11    If Recruiting Company breaches the covenants set forth in Section 5 of this Agreement, Visa Solutions Healthcare will be entitled to the following remedies:

    6.11.1  Damages from Recruiting Company

    6.11.2  To offset against all obligations to Recruiting Company any and all amounts which may be due from Visa Solutions Healthcare; and

    6.11.3  In addition to its right to damages and any other rights it may have, to obtain injunctive or other equitable relief to restrain any breach or threatened breach or otherwise to specifically enforce the provisions of Section 5 of this Agreement, it being agreed that money damages alone would be inadequate to compensate Visa Solutions Healthcare and it would be an inadequate remedy for such breach.

    6.11.4  The rights and remedies of the Parties to this Agreement are cumulative and not alternative.

    6.11.5  Visa Solutions Healthcare shall not be entitled to exercise any remedies under this Section 5 unless and until Visa Solution Healthcare has provided written notice to Recruiting Company of the alleged breach and Recruiting Company has failed to (i) to cure the alleged breach, if such breach is capable of cure, within one week after receipt of written notice from Visa Solutions Healthcare to Recruiting Company and (ii) cure such breach as soon as practicable thereafter.

**Section 7.  Other Provisions**

7.1     Logo; Intellectual Property; Marketing. Recruiting Company shall obtain written authorization from Visa Solutions Healthcare if Recruiting Company wishes to use Visa Solutions Healthcare name and logo in reference letters or marketing materials.

7.2     Successors and Assigns.  This Agreement will be binding upon Visa Solutions Healthcare and Recruiting Company and will inure to the benefit of the Parties and their affiliates, successors, and assigns and legal representatives.

7.3     Waiver. The rights and remedies of the Parties to this Agreement are cumulative and not alternative.

7.3.1   Neither the failure nor any delay by any Party in exercising any right, power, or privilege under this Agreement will operate as a waiver of such right, power, or privilege, and no single or partial exercise of any such right, power, or privilege will preclude any other or further exercise of such right, power, or privilege or the exercise of any other right, power, or privilege.

7.3.2   To the maximum extent permitted by applicable law, (a) no claim or right arising out of this Agreement can be discharged by one Party, in whole or in part, by a waiver or renunciation of the claim or right unless in writing signed by the other Party; (b) no waiver that may be given by a Party will be applicable except in the specific instance for which it is given; and (c) no notice to or demand on one Party will be deemed to be a waiver of any obligation of such Party or of the right of the Party giving such notice or demand to take further action without notice or demand as provided in this

Agreement.

7.4  Section Headings; Construction. The headings of Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All references to "Section" or "Sections" refer to the corresponding Section or Sections of this Agreement unless otherwise specified. All words used in this Agreement unless otherwise specified. All words used in this Agreement will be construed to be of such gender or number as the circumstances require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

7.5  Language; Mutual Understanding. This Agreement was originally drafted in American English, and all terms and meanings are to be interpreted by the rules of American English. Any translation of this Agreement may not accurately define or represent each term in this Agreement. It is recommended that each Party engage counsel who can explain each term. By executing this document, each Party acknowledges and represents that they understand the terms of this Agreement and are entering into the Agreement after being given the opportunity to seek clarification by their own counsel.

7.6  Certain Terms Defined. When used in this Agreement: "Person" shall mean any individual, corporation, partnership, proprietorship, limited liability company, trust, association, estate, governmental entity, non-profit entity, or any other entity of any nature.

**Section 8. Duration and termination of the Agreement**

8.1  Term. This Agreement will commence on the Effective Date and will continue for an indefinite period until terminated in writing by either Party. For clarity, any writing, including an email, is sufficient to terminate this Agreement.

8.2  Termination for Material Breach. Either Party may terminate this Agreement upon a material breach by the other of any of the terms of this Agreement; provided, however, the non-breaching Party shall first notify the breaching Party in writing of the reason for termination and provide the breaching Party thirty (30) days to cure the breach. If, upon the expiration of the thirty (30) day-period, the breaching Party has not cured the breach to the reasonable satisfaction of the non-breaching Party, the non-breaching Party may immediately terminate this Agreement.

8.3  Termination for Uncurable Cause or Violation of Law by a Party. Notwithstanding Section 8.2, it is acknowledged and agreed by the parties that some breaches cannot be cured, including but not limited to the violation of law by a Party, independent of this Agreement. In the event of such breach, either party may terminate this Agreement for cause on sixty (60) days prior written notice to the other Party, unless the circumstances require an earlier, or immediate, termination. In this case, the terminating party shall provide sufficient documentation of any such cause to the other Party, the circumstances requiring the immediate termination, and each Party shall cooperate with the other to wind down any remaining business, payments, or other matters as required by this Agreement.

8.4  Termination Due to Change in Law. This Agreement is intended to comply with existing State, Federal and International laws related to recruiting of professionals for placement in the United States of America and the provision of services as described herein. However, the Parties acknowledge that the existing law and regulations may change

and that the courts, or State or Federal agencies with appropriate jurisdiction, may change their interpretation of existing law. Upon the enactment or amendment of any law or regulation, or upon the issuance of any judicial or interpretive rule or any existing law or regulations, that in the opinion of either Party's counsel renders this Agreement illegal or materially changes the obligations of the Parties, the Parties shall use their best efforts during a thirty (30) day period thereafter to mutually agree to such amendments to the Agreement as to permit its valid and legal continuation. If after such thirty (30) day period, the Parties are unable to agree to amend this Agreement, this Agreement shall automatically terminate. In the event of such termination, each Party shall use their best efforts to wind down any ongoing transactions between the Parties to the extent that it is permissible by law, including the payment of services rendered prior to the acknowledgement by either party that the Agreement is out of compliance with the law.

8.5 <u>Termination Without Cause</u>. Either Party may terminate this Agreement in accordance with the following:

8.5.1 If there are no outstanding matters, and no recruit placements are expected within the following six (6) month period, either party may terminate with ninety (90) days' notice.

8.5.2 If there are outstanding matters, including recruit placements expected within the following six (6) month period, either party may notify the other with at least sixty (60) days' notice that the Agreement shall terminate at the end of the completion of the outstanding matters.

8.5.3 In the event either party declares bankruptcy or is unable to perform under the Agreement.

8.6 <u>Effect of Termination.</u> Upon termination of this Agreement, as provided herein, neither Party shall have any further obligation hereunder except for (i) obligations accruing prior to the date of termination, and (ii) obligations, promises, or covenants contained herein which are expressly made to extend beyond the Term of this Agreement.

**Section 9. Dispute Settlement**

9.1 Should a dispute arise between the parties in connection with this Agreement, the Parties agree to confer within ten (10) business days in a good faith effort to resolve the dispute before initiating further legal actions. In the event the Parties are unable to resolve such dispute within thirty (30) days after initiating attempts to resolve such dispute, the parties shall proceed as described below in this Section 9.

9.2 In the event such dispute is in connection with performance of this Agreement, such dispute arises during the Term, and the parties are unable to resolve such dispute, the parties agree to a non-binding mediation with an attorney mediator within thirty (30) days after it becomes apparent that the parties are unable to resolve the dispute.

9.3 In the event such dispute arises after the Term of this Agreement, whether by Termination or expiration, the parties agree to non-binding mediation as described below prior to filing suit ("Mediation Program")

9.4 Upon the demand of any Party, any Dispute (as defined below) shall attempt to be resolved by mediation in accordance with the terms of this Mediation Program.

9.5     A "Dispute" shall include any action, dispute, claim, or controversy of any kind (e.g., whether in contract or in tort, statutory or common law, legal or equitable, or otherwise) now existing or hereafter arising between the parties in any way arising out of, pertaining to or in connection with: all past, present, or future business relationships or other transactions, contracts or agreements of any kind whatsoever between the parties; any past, present or future incidents, omissions, acts, errors, practices, or occurrences causing injury to either party whereby the other party or its owners, officers, assigns, agents, employees or representatives may be liable, in whole or in part; or any other aspect of the past, present, or future relationships of the parties including any agency, independent contractor or employment relationship but excluding claims for workers' compensation and unemployment benefits ("Relationship").

9.6     Any party who fails or refuses to submit to mediation following a lawful demand by the opposing party shall bear all costs and expenses incurred by the opposing party in compelling mediation of any Dispute.

9.7     All Disputes between the Parties submitted to mediation shall be in accordance with the following requirements: (1) mediation shall be located in Harris County, Texas; (2) the fee for the mediation shall be borne equally by the parties; (3) the full mediation process shall be concluded within one hundred twenty (120) days from the date of the raising of a Dispute; (4) the parties are prohibited from bringing a class or collective action against one another for any Dispute arising pursuant to this Agreement; and (5) mediation shall consist of no more than two (2) days.

9.8     *No Waiver; Preservation of Remedies; Multiple Parties*. No provision of, nor the exercise of any rights under, this Mediation Program shall limit the right of any party, during any Dispute, to seek, use, and employ ancillary or preliminary remedies, judicial or otherwise, for the purposes of realizing upon, preserving, protecting, such party's property, assets, or business. Any such action shall not be deemed an election of remedies. Such rights shall include, without limitation, rights and remedies relating to or obtaining provision or ancillary remedies such as injunctive relief, sequestration, attachment, garnishment, or the appointment of a receiver from a court having jurisdiction. Such rights may be exercised at any time except to the extent such action is contrary to a final award or decision in any judicial action or arbitration. The institution and maintenance of an action for judicial relief or pursuit of provisional or ancillary remedies shall not constitute a waiver of the right of any party, including the plaintiff, to submit the Dispute to mediation, nor render inapplicable the compulsory mediation provisions hereof.

9.9     Any mediator selected shall be required to be an attorney licensed to practice law in the State of Texas and shall be required to be experienced and knowledgeable in the substantive laws applicable to the subject matter of the Dispute.

9.10     The provisions of this Mediation Program shall survive any termination, amendment, or expiration of the Documents or the Relationship, unless the parties otherwise expressly agree in writing.

9.11     Each party agrees to keep all Disputes and mediation proceedings strictly confidential, except for disclosures of information required in the ordinary course of business of the parties or by applicable law or regulation.

9.12    In the event either party resorts to legal action to enforce the terms and provisions of this Agreement, the prevailing party shall be entitled to recover the costs of such action so incurred, including, without limitation, reasonable attorney's fees.

**9.12.1** Both Parties state that in case any disputes on the contents of the provisions of the present Agreement or on the execution of the Agreement should arise, the Parties will first of all try to settle the dispute amicably and out of court, especially by initiating and holding proper negotiations in good faith. If the Parties fail to agree on the manner of settling the dispute, the Parties state that any disputes in the matters of the present Agreement shall be settled as provided in Section 10 below.

**Section 10. Governing Law; Waiver of Jury Trial**

10.1 THIS AGREEMENT SHALL BE GOVERNED BY, INTERPRETED AND CONSTRUED IN ACCORDANCE WITH THE DOMESTIC LAWS OF THE STATE OF TEXAS, UNITED STATES, WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW OR CONFLICTING PROVISION OR RULE (WHETHER OF THE STATE OF TEXAS OR ANY OTHER JURISDICTION) THAT WOULD CAUSE THE LAWS OF ANY JURISDICTION OTHER THAN THE STATE OF TEXAS TO BE APPLIED.  IN FURTHERANCE OF THE FOREGOING, THE DOMESTIC LAWS OF THE STATE OF TEXAS (INCLUDING THE ACT) SHALL CONTROL THE INTERPRETATION AND CONSTRUCTION OF THIS AGREEMENT, EVEN IF UNDER SUCH OTHER JURISDICTION'S CHOICE OF LAW OR CONFLICT OF LAW ANALYSIS, THE SUBSTANTIVE LAW OF ANOTHER JURISDICTION ORDINARILY WOULD APPLY.

10.2    Expenses. Each of the Parties will bear its own costs and expenses including legal fees and expenses) incurred in connection with preparation for his Agreement.

**Section 11. Jurisdiction and Venue.**

11.1    Each of the Parties hereto hereby irrevocably and unconditionally submits, for himself, herself or itself and his, her or its Assets, to the exclusive jurisdiction of any Texas state court or federal court of the United States of America sitting in Harris County, Texas, and any appellate court from any such Texas state court or federal court, in any proceeding arising out of, connected with, related to or incidental to this Agreement or the transactions contemplated hereby, or for recognition or enforcement of any judgment arising therefrom, connected thereto, related thereto or incidental thereto, and each of the Parties hereto hereby irrevocably and unconditionally agrees that all claims with respect to any such proceeding may be heard and determined in any such Texas state court or, to the extent permitted by applicable Law, in any such federal court.  Each of the Parties hereto hereby agrees that a final judgment in any such proceeding shall be conclusive and may be enforced in any other jurisdiction by a proceeding on the judgment or in any other manner provided by applicable Law.

11.2    Each of the Parties hereto hereby irrevocably and unconditionally waives, to the fullest extent he, she or it legally and effectively may do so, any objection that he, she or it now or hereafter may have to the laying of venue of any proceeding arising out of, connected with, related to or incidental to this Agreement or the transactions contemplated hereby in any Texas state court or federal court of the United States of America sitting in Harris

County, Texas, or any appellate court from any such Texas state court or federal court. Each of the Parties hereto hereby irrevocably and unconditionally waives, to the fullest extent he, she or it legally and effectively may do so, the claim or defense of an inconvenient forum to the maintenance of such proceeding in any such Texas state court or federal court.

11.3   Each of the Parties hereto hereby agrees that the mailing by registered or certified mail, return receipt requested, postage prepaid, of any process required by any such Texas state court or federal court of the United States of America sitting in Harris County, Texas, or any appellate court from any such Texas state court or federal court, shall constitute valid and lawful service of process against such Party, without the necessity for service of process by any other means provided by applicable Law.

### Section 12.  Notifications, declarations, and notices

12.1   Any documents and declarations, unless stated otherwise in the present Agreement, shall be delivered to the other Party in a written form and signed by the authorized representatives of both Parties.

12.2   The documents can be delivered in a registered mail, by courier service or by e-mail if confirmed with a registered letter, and should be sent to the following addresses:

Visa Solutions Healthcare
25227 Grogans Mill Rd, Suite 220
The Woodlands, TX 77380
Attn: Kelly Brioso

Recruiting Company:
Staffactory, LLC
5901 Century Blvd., Suite 750
Los Angeles, CA 90045
Attn: Chiraz Kelly

Any modifications in the addresses above will become effective upon reception by the other Party of the written notice from the modifying Party.

### Section 13.  Entire Agreement; Assignment

13.1   This Agreement shall be binding upon and inure to the benefit of the Parties named herein and their respective successors and permitted assigns.  This Agreement constitutes the entire agreement among the Parties and supersedes any prior understandings, agreements, or representations by or among the Parties, written or oral, to the extent they have related in any way to the subject matter hereof.

13.2   Recruiting Company cannot assign its rights and obligations arising under this Agreement to the third parties without Visa Solutions Healthcare's prior written consent.

13.3   Recruiting Company can delegate actions related to the performing of the Service to the third Parties, yet in such a case Recruiting Company will be liable for the actions and failures of the third parties as if they were its own.

13.4   Any business structuring event which may trigger a change in tax identification number, ownership, control of, or management of Recruiting Company, requires a sixty (60) day notification to Visa Solutions Healthcare of any such proposed change.

**Section 14.   Severability; Modifications**

14.1   In the event any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal, or unenforceable provision had never been contained herein.

14.2   Any changes or modifications to the present Agreement must be in writing and executed by the Parties. The Parties agree that if any part of the Agreement becomes null and void or otherwise legally defective, the remaining parts of the Agreement shall remain in force, unless keeping the remaining parts of the Agreement without the void or defective parts loses economic sense for any of the Parties.

14.3   In the case of the provisions considered to be void or impossible to execute, the Parties will engage in negotiations conducted in good faith that aim at replacing the void or defective provisions with alternative provisions that will be considered obliging and possible to execute and will reflect the initial intentions of the Parties.

**Section 15.   Versions and copies**

15.1   The present Agreement was drafted in two identical copies, one for each Party. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together will constitute one and the same instrument.

**Section 16.   Entry into force**

The present Agreement enters into force on the date of its signing.

Staffactory LLC. .

By: _*Chiraz Kelly*_
    Chiraz Kelly

Title: _President_

Date: _12/17/2021_

Accepted:

Visa Solutions Healthcare, LLC

By: _*kelly Brioso*_
    E010A331E57647B...
    Kelly Brioso

Title:  Vice President International Healthcare

Date: _12/17/2021_

# Appendix A
# Recruitment Order

Recruitment Order Form from Visa Solutions Healthcare

Type of recruit requested: Registered Nurse.

Required experience: Minimum 1 year within specialty most recently employed.

Required license: NCLEX and Visa Screen certification

Passage of IELTS or TOEFL

Other Requirements, including skills or required abilities of recruit:

Job Descriptions to Supplied for each specialty, dependent on client location and needs.

Agreed:

Visa Solutions Healthcare, LLC.

Signature: _Kelly Brioso_

Title: VP of International Healthcare

Recruiting Company

Staffactory LLC.

Signature: _Chiraz Kelly_

Title: President

# Appendix B
# Fee Schedule

In full consideration for the performance of the Services provided hereunder, Recruiting Company shall receive the following compensation per qualified ("HCP fee"):

| | |
|---|---|
| Registered Nurses from local country with Fully Executed Employment Agreement between the US Employer and the HCP: | $4750.00 USD |

The Recruiting Company shall receive portions of the HCP fee as per the following schedule:

B.1.    Twenty-five percent (25%) of the HCP fee is payable with a fully executed employment agreement between the US Employer and the HCP. The Recruiting Company will invoice Visa Solutions Healthcare. Payment terms of 30 business days. Send to: accounting@visasolutions.com and cc: Kelly Brioso – k.brioso@visasolutionshc.com

B.2.    After Recruiting Company has submitted all documentation to Visa Solutions Healthcare as described in Appendix C ("Required Documentation"), the I-140 immigrant petition can be prepared and filed with USCIS. After the receipt notice is received; fifty percent (50%) of the HCP fee is payable to the Recruiting Company. The Recruiting Company will invoice Visa Solutions Healthcare. Payment terms of 30 business days. Send to: accounting@visasolutions.com and cc: Kelly Brioso – k.brioso@visasolutionshc.com

B.3.    The remaining twenty-five percent (25%) of the HCP Fee will be paid to Recruiting Company upon the commencement of ninety (90) days after the HCP's first day of employment with the HCP's US Employer. The Recruiting Company will invoice Visa Solutions Healthcare. Payment terms of 30 business days. Send to: accounting@visasolutions.com and cc: Kelly Brioso – k.brioso@visasolutionshc.com

# Appendix C
# Required Documentation

Visa Solutions Healthcare requires that the following information be provided for each accepted HCP recruit and family* when applicable:

| Visa Solutions Healthcare Document Checklist with Submission | | |
|---|---|---|
| Documents | RN with NCLEX | RN without NCLEX |
| Visa Solutions Healthcare formatted resume | X | X |
| Copy of current international nursing license | X | X |
| Copy of Nursing Diplomas/Degrees | X | X |
| Copy of High School Diploma | X | X |
| Copy of Nursing Transcripts | X | X |
| Copy of any US State license held | X | X |
| Employment Certificate(s) | X | X |
| Driver's License | X | X |
| Copy of Visascreen Certification (if applicable) | X | X |
| Copy of CGFNS Certificate if applicable | X | X |
| Copy of CGFNS CES Report (if applicable - not all Boards will have a CES) | * | * |
| Copy of IELTS Results | X | X |
| Copy of NCLEX Candidate Report or Pass Letter | X | |
| Copy of Birth Certificate for RN | X | X |
| Copy of entire passport for RN | X | X |
| Copy of Marriage/divorce certificates/ spouse's death cert if applicable - for all marriages | * | * |
| Copy of birth certificate - Family | * | * |
| Copy of Passport - Family | * | * |

*If Applicable*